UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO: 2:17-cr-16-FtM-99CM

KAY F. GOW, ROBERT T. GOW, and
JOHN G. WILLIAMS, JR.
_____/

## OPINION AND ORDER[1]

Pending before the Court is Defendant John G. Williams Jr.'s Motion for Severance (Doc. 79) and the United States of America's Response in Opposition (Doc. 85). For the following reasons, the Court denies Williams' motion.[2]

## BACKGROUND

In September 2011, Lee County awarded VR Laboratories, LLC ("VR Labs") a grant to build an herbal supplement manufacturing-and-bottling facility. Defendants Kay and Robert Gow (collectively, the "Gows") owned, controlled, and operated VR Labs. After winning the grant, the Gows hired their longtime friend Defendant John G. Williams to build the facility's bottling line. Nevertheless, come May 2013, no facility had been built

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Although Williams requests oral argument on his motion to sever, the Court denies the request because the papers and applicable law provide sufficient context to rule on the matter.

and Lee County paid VR Labs nearly $5 million dollars for work never done on the facility. The Gows instead allegedly kept $1.4 million of the grant money for their personal benefit through a kickback scheme involving Williams. Specifically, Williams allegedly doubled the price that his subcontractor charged for the bottling line and submitted the fraudulent invoices to the general contractor for payment. The general contractor submitted Williams' invoices to VR Labs, which requested reimbursement from Lee County based on the same invoices. Once Williams was paid, he allegedly wired much of the funds back to VR Labs.

Because of this scheme, a federal grand jury indicted the Gows and Williams for conspiracy to commit wire fraud and actual wire fraud.[3] (Doc. 3). Because of Williams' alleged role in the conspiracy, the Indictment names him in roughly 22 of the 67 overt acts. (Doc. 3 at 15-31). Williams now moves to sever his trial from the Gows because a joint trial, in his view, will prevent the jury from arriving at a fair and reliable judgment about his guilt. (Doc. 79).

## LEGAL STANDARD

The general rule is to join defendants indicted together in the same trial – especially in conspiracy cases. *See United States v. Lopez*, 649 F.3d 1222, 1234 (11th Cir. 2011) (citations and footnote omitted); *see also* Fed. R. Crim. P. 8(b) (providing joint trials of two or more defendants who allegedly participated in the same offense). This rule reflects the important role that joint trials play in the criminal justice system: "they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on

---

[3] The grand jury also indicted the Gows – but not Williams – for money laundering conspiracy and illegal monetary transactions. (Doc. 3).

victims and witnesses, increase efficiency, and conserve scarce judicial resources." *Lopez*, 649 F.3d at 1234 (citations omitted). "In considering a motion to sever, the district court must determine whether the prejudice inherent in a joint trial outweighs the public's interest in judicial economy." *United States v. Francis*, 131 F.3d 1452, 1459 (11th Cir. 1997).

The joint trial rule, however, "is not quite ironclad." *Lopez*, 649 F.3d at 1234. A court may sever defendants "if a defendant can demonstrate that a joint trial will result in 'specific and compelling prejudice' to his or her defense." *United States v. Oscar*, 877 F.3d 1270, 1290 (11th Cir. 2017) (citation omitted); *see also* Fed. R. Crim. P. 14(a). "To show compelling prejudice, a defendant must establish that a joint trial would actually prejudice [him] and that a severance is the only proper remedy for that prejudice – jury instructions or some other remedy short of severance will not work." *Lopez*, 649 F.3d at 1234. A defendant does so "by showing that the jury was unable to sift through the evidence and make an individualized determination as to each defendant." *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997); *see also Oscar*, 877 F.3d at 1290 ("The defendant must show that a jury will be unable, due to the complex nature of the evidence, to make a reliable determination of guilty for each defendant." (citation omitted)). Although there is an avenue for severance, exceptional circumstances justifying this relief are "few and far between." *Lopez*, 649 F.3d at 1234. A defendant seeking severance thus bears a heavy burden. *Id.*; *see also Francis*, 131 F.3d at 1459 (stating defendant faces a heavy burden for severance, "and one which mere conclusory allegations cannot carry").

"[J]oined defendants are only entitled to severance in two situations: where there is a serious risk that a joint trial would either (1) compromise a specific trial right of one of the defendants or (2) prevent the jury from making a reliable judgment about guilt or innocence despite a limiting instruction." *United States v. Fagan*, 518 F. App'x 749, 752 (11th Cir. 2013); *see also Lopez,* 649 F.3d at 1234 (stating "[a]side from those two situations, jointly indicted defendants are not entitled to a severance"). Here, Williams proceeds under the second category. And one way to show that a jury will be prevented from making a reliable judgment (even with limiting instructions) is "where overwhelming evidence of guilt is introduced against a codefendant that would not have been admissible against the defendant in a separate trial, raising the specter of 'spillover effect.'" *Lopez*, 649 F.3d at 1235 (citations omitted). But "a court's cautionary instructions ordinarily will mitigate the potential 'spillover effect' of evidence of a co-defendant's guilt." *Id.* (citation omitted); *see also Oscar*, 877 F.3d at 1291 (stating "where the district court gives a curative instruction to address prejudicial evidence, th[e Eleventh Circuit] will reverse only where the evidence was so highly prejudicial that it could not be cured by the district court's admonition").

Against this backdrop, the Court turns to Williams' arguments for severance.

## DISCUSSION

Williams moves for severance on two grounds, neither of which is persuasive. First, he argues that a joint trial will cause an evidentiary spillover because the evidence against the Gows is so vast and compelling that it will prevent the jury from making a reliable judgment on his guilt. Tangled with this argument, he says that evidence of the Gows' prior bad acts, if admissible, will create compelling prejudice against him. Second,

4

Williams argues the Indictment alleges two separate conspiracies: one spanning three years before VR Labs was formed and involving only the Gows, and the other relating to Lee County's grant to VR Labs and Defendants' alleged kickback scheme. Williams maintains evidence of the first conspiracy, in which he was not involved, will taint the jury against him.

The Court finds that neither the alleged overwhelming evidence against the Gows nor the Gows' prior bad acts will prevent the jury from rendering a reliable verdict about Williams. *See Oscar*, 877 F.3d at 1290 (stating "[t]he mere fact that there may be an enormous disparity in the evidence admissible against one defendant compared to the other defendants" does not equate to compelling prejudice (citation omitted); *Francis*, 131 F.3d at 1459 (stating "compelling prejudice does not exist merely because much of the evidence at trial applies only to a co-defendant"). The facts are not so grave that jury instructions will not cure any prejudice to Williams because of the joint trial. The Eleventh Circuit's decision in *Lopez* is decisive on this point.

In *Lopez*, four defendants were jointly tried for drug conspiracy. Two moved unsuccessfully to sever the trial because their co-defendants were also indicted for murdering a fellow drug dealer, his wife, and their two toddlers. During trial, the jury heard testimony about how the family was gunned-down in the street and they saw photographs of the dead. Because of this evidence, the defendants argued that they were unduly prejudiced. The Eleventh Circuit disagreed. It stressed the importance of the jury instructions and the district court's reminders to the jury to consider the evidence against only those defendants it implicated and to assess each defendant's guilt separately. *Lopez*, 649 F.3d at 1238-39.

The nature of the evidence against the Gows is far less prejudicial than at issue in *Lopez*. While the evidence in *Lopez* regarded graphic gang-related murders, the evidence here involves an alleged white-collar crime. If jury instructions addressed the prejudice in *Lopez*, the same can be expected for Williams. At bottom, Williams has not met his heavy burden of showing he will suffer compelling prejudice to warrant severance. *See Zafiro v. United States,* 506 U.S. 534, 540 (1993) ("[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials.").

The Court also does not find that the Indictment alleges two conspiracies (at this stage). Even if the Indictment did, Williams provides no case law in which several conspiracies alleged in an indictment serve as grounds for severance. This lack of case law is likely because the Eleventh Circuit has affirmed the denial of severance in a similar context. *See, e.g.*, *United States v. Meester*, 762 F.2d 867, 884 (11th Cir. 1985) (affirming denial of severance when the defendant argued that she was prejudiced by the "spillover" effect of evidence that of other conspiracies in which she was not involved). Again, the remedy here is cautionary instructions – not severance.

In conclusion, Williams has not met his heavy burden to show specific and compelling prejudice to warrant severance, and judicial economy weighs against severance.[4]

---

[4] The Government has alluded that Defendants' trial may last several months. The trial's length forces the Court to be keenly aware of preserving the public's interest in judicial economy because the Undersigned has been the only active United States District Judge in the Fort Myers' Division since June 2015 and will continue to be so for the near future. Also, even if Williams played a limited role in the scheme, the public's interest in efficient and economic administrative of justice outweighs any prejudice to him inherent in a joint trial. And any argument otherwise contravenes the general principle that "the law favors

Accordingly, it is now

**ORDERED:**

Defendant John G. Williams Jr.'s Motion for Severance (Doc. 79) is **DENIED**.

**DONE AND ORDERED** in Fort Myers, Florida on this 4th day of April 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record

---

joint trials of defendants charged with a common conspiracy since the nature and scope of the confederation is often prohibitively large and the evidence against the individual defendants cumulative." *United States v. Dorsey*, 819 F.2d 1055, 1058 (11th Cir. 1987).