# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                              CASE NO: 2:17-cr-16-FtM-29CM

KAY F. GOW,
ROBERT T. GOW, and
JOHN G. WILLIAMS, JR.

_____

## ORDER

This matter comes before the Court upon review of the United States'
Application for Order Under the All Writs Act or, in the Alternative, Motion for Rule
17(c) Subpoena.   Doc. 119.   Defendant John G. Williams, Jr. filed a response in
opposition on December 10, 2018.   Doc. 123.   Defendants Kay F. Gow and Robert
T. Gow have not filed responses in opposition, and the time for doing so has passed.
For the reasons stated below, the motion is denied without prejudice.

## I.    Relevant Background

This case is set for a jury trial before the Honorable John E. Steele beginning
on February 5, 2019.   Doc. 121.   On February 23, 2017, a federal grand jury
indicted Defendants on charges including wire fraud, money laundering and
conspiracy.   Doc. 3.   In relevant summary, the indictment alleges that the Gows
operated VR Laboratories, LLC and VR Labs, Inc. (collectively, "VR Labs"), a
company the Gows falsely claimed produced FDA-approved botanical pharmaceutical
products.   *Id.* ¶¶ 1-2, 6-7, 20.   Williams operated Williams-FRM Fast Response
Maintenance, LLC ("Williams FRM"), which owned the fictitious company Williams

Specialty Bottling Equipment ("Williams Bottling"), which later contracted with VR Labs.  *Id.* ¶¶ 3, 10.

VR Labs applied to a grant program administered by Lee County called the Financial Incentives for Recruiting Strategic Targets ("FIRST") initiative program, which was designed to bring technology jobs to Lee County.  *Id.* ¶ 15.  The indictment charges Defendants fraudulently misrepresented the financial projections and financial strength of VR Labs in the grant application and concealed material facts about the company.  *Id.* ¶ 23.  Lee County approved the application and awarded VR Labs a $5 million grant in FIRST initiative funds to be used to reimburse Qualified Capital Investments ("QCIs") [1] expended by VR Labs in building a manufacturing facility in Lee County.  *Id.* ¶ 17.  The grant required VR Labs to invest an additional $9 million in QCIs by September 21, 2013, and to create 208 technology jobs in Lee County by December 31, 2016.  *Id.*  The indictment alleges that instead of using the funds to build the manufacturing facility, Defendants fraudulently used the funds for their "personal enrichment."  *Id.* ¶ 38.

Defendants' fraudulent scheme allegedly continued from approximately September 2010 through March 2013 and resulted in a total loss to Lee County of $4,694,548.04 of FIRST initiative program grant funds.  *Id.* ¶¶ 18, 39.  As part of the scheme, and relevant here, the Gows hired Williams to build a bottling line for the manufacturing facility.  *See id.* ¶¶ 3, 25.  Williams allegedly created the

---

[1] The grant agreement between Lee County and VR Labs defined a QCI as an expense incurred purchasing manufacturing equipment, constructing improvements on the site of the manufacturing facility or acquiring other equipment for the facility.  Doc. 3 ¶ 17.

fictitious company Williams Bottling to produce the bottling line. *Id.* ¶ 10. Williams then subcontracted with a legitimate bottling line manufacturer and submitted inflated invoices to the Gows for payment out of the grant money. *Id.* ¶¶ 13, 30, 35.

The United States believes[2] that once Williams received payment on the inflated invoices, he used a portion to pay the legitimate bottling line manufacturer and paid the balance to the Gows, who used the money for personal expenses and to perpetuate the fraud. Doc. 119-4 at 1. According to the United States, Defendants claim the grant money was not diverted but used to purchase expensive bottling line software ("Software") to help Williams Bottling develop a bottling line for VR Labs, thus the invoices appeared inflated because they reflected the cost of the bottling line plus the cost of the Software. *Id.* The United States believes the Software may not exist at all and is a "sham" used by Defendants to cover up their alleged fraud. *See id.* at 3. FBI agents questioned Williams about the existence of the Software on November 28, 2012, at which time Williams led the agents to believe the development of the Software was never completed. *See id.* The United States represents that despite "repeated requests for disclosure" in discovery, Defendants have not provided any information related to the Software. *Id.* at 3 n.3.

In a separate but related civil case, Lee County filed a lawsuit against VR Labs in the Circuit Court of the Twentieth Judicial Circuit in Lee County, Florida, *Lee*

---

[2] The United States summarized part of its theory of the case in a letter dated October 19, 2018 and attached to the motion. *See* Doc. 119-4.

*County v. VR Labs, Inc., et al.*, case number 14-CA-000898 ("Civil Case").[3]   *See* Doc.

119 at 1.   On September 20, 2018, the United States met with counsel representing

Lee County in the Civil Case.   Doc. 119-4 at 3.   During the meeting, the United

States learned that a Protective Order was entered in the Civil Case on February 16,

2017, between Lee County, VR Labs, and non-party Williams FRM.   *See id.*; Doc.

119-1.   The Protective Order suggests that Williams FRM produced information

related to the Software to Lee County during discovery in the Civil Case.[4]   *See* Doc.

119-4 at 3; Doc. 119-1 at 1.   Because the Protective Order was still in place, however,

counsel for Lee County could not provide the information or any summary of the

information received to the United States for use in the criminal case.   Doc. 119-4 at

3.

On September 21, 2018, the United States sent a letter to counsel for

Defendants requesting information related to the Software and stating that unless

the information was produced by October 1, 2018, the United States would ask the

Court to exclude any mention of the Software at trial.   Doc. 119-2 at 1-2.   On

October 19, 2018, the United States subpoenaed counsel for Lee County to testify at

---

[3] Although not attached to the United States' motion or Williams' response, the Court takes judicial notice that on May 31, 2017, final judgment was entered in the Civil Case in favor of Lee County in the amount of $4,694,548.04, the full amount of loss Defendants allegedly caused to the FIRST initiative program.

[4] The Protective Order, attached to the United States' motion, states that non-party Williams FRM possesses "certain non-public information that constitutes confidential, proprietary and/or private information" described as "the Model Software[.]"   Doc. 119-1 at 1-2.   The Protective Order provides that no party or non-party may use any of the information related to "the Model Software" for any purpose other than the "Trade Secret Process" in the Civil Case unless and until the circuit court modifies or vacates the Protective Order by subsequent order.   *Id.* at 2.

trial in the criminal case on February 5, 2019 at 9:00 a.m. and to produce information related to the Software upon appearance.   Doc. 119-3 at 1, 3.   On October 25, 2018, Lee County filed a motion in the Civil Case ("Motion for Relief") requesting that the circuit court grant counsel for Lee County relief from any prior orders that would prohibit disclosing information responsive to the United States' subpoena.   *See* Doc. 119-5 at 1, 5.   Non-party Williams FRM filed a response to the Motion for Relief on November 2, 2018, requesting that the circuit court deny the motion and enforce the provisions of the Protective Order requiring destruction of information related to the Software.   Doc. 119-6 at 1, 6.   The circuit court set a hearing on the Motion for Relief before the Honorable Leigh Frizzell Hayes, on January 23, 2019 at 1:45 p.m.   Doc. 120.   The United States filed the present motion on November 30, 2018.   Doc. 119.

   A.   *Order under the All Writs Act*

   The United States requests the Court issue an order under the All Writs Act directing counsel for Lee County to produce to the United States the Software and related materials produced by Williams FRM in the Civil Case, including any expert report prepared.   Doc. 119 at 1.   The United States also requests that the Court order Williams to "withdraw any objection . . . to such production advanced to date" in the Civil Case.   *Id.* at 1-2.   The United States argues the Court should issue the Order "to prevent frustration of the proper administration of justice" by Williams. *Id.* at 8.   In support, the United States notes that Williams previously told FBI agents essentially that the Software did not exist, and the United States has been unable to obtain the Software from Defendants through discovery.   *Id.*

Williams responds the United States fails to meet the five-part test for issuance of an order under the All Writs Act, and the Court should not use the All Writs Act to force Lee County to violate a valid circuit court order or Williams to withdraw his valid objection to production of the Software.   Doc. 123 at 7.   Williams argues the United States' request is not necessary or appropriate to effectuate a previously issued order, and the All Writs Act is used only to "effectuate orders that the Court has signed after independent judicial review, and which were ordered in furtherance of a specific purpose."   *Id.*   He further argues the burden imposed by the request is unreasonable, as the United States is essentially requesting that the parties to the Civil Case disregard the circuit court's orders.   *Id.* at 8.   Finally, Williams argues that the relief requested is prohibited by the Anti-Injunction Act, 28 U.S.C. § 2283, as any Order compelling Lee County's counsel to violate the Protective Order would enjoin the circuit court from deciding the merits of the Motion for Relief. *Id.* at 9-10.

The All Writs Act provides:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a).   Five requirements must be met before a court may issue an order under the All Writs Act compelling the assistance of a third party in a criminal proceeding: (1) the order must be necessary or appropriate to effectuate a previously issued order; (2) the order must not be covered by another statute; (3) the order must not be inconsistent with the intent of Congress; (4) the third party must not be too far

removed from the investigation or proceeding; and (5) the burden imposed on the third party must not be unreasonable. *United States v. N.Y. Telephone Co.*, 434 U.S. 159, 172-78 (1977); *United States v. Blake*, 868 F.3d 960, 970 (11th Cir. 2017).

Here, the Court finds the United States has failed to meet the first requirement, and thus it is not necessary to analyze the remaining requirements. An order issued under the All Writs Act must be "necessary or appropriate to effectuate a previously issued order[.]" *Blake*, 868 F.3d at 970. In recognition of this requirement, the cases cited by the United States involve courts ordering third parties to assist in carrying out the terms of previously issued orders. *See* Doc. 119 at 7; *N.Y. Telephone*, 434 U.S. at 161-63 (issuing order directing telephone company to provide FBI with facilities and technical assistance necessary to implement the court's previous order authorizing use of pen registers); *Mich. Bell Telephone Co. v. United States*, 565 F.2d 385, 386-87 (6th Cir. 1977) (directing telephone company to assist FBI in installing trap and trace devices pursuant to the court's order authorizing use of the devices); *United States v. Hall*, 583 F. Supp. 717 (E.D. Va. 1984) (ordering credit card company to provide U.S. Marshal with fugitive's records to assist in executing previously issued arrest warrant). There is no similar order here, and the United States' request that the Court direct counsel for Lee County to produce the Software prior to trial is not "necessary or appropriate" to effectuate any previously issued order. *See Blake*, 868 F.3d at 970.

Further, the relief requested by the United States is in part the subject of the Motion for Relief in the Civil Case set for hearing in the circuit court on January 23,

2019.   *See* Doc. 119-5, Doc. 120.   An order under the All Writs Act compelling counsel for Lee County to produce the Software despite the Protective Order would essentially enjoin the circuit court from deciding the merits of the Motion for Relief. The Anti-Injunction Act prohibits a federal court from enjoining state court proceedings unless "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."   28 U.S.C. § 2283. The Eleventh Circuit has interpreted the "necessary in aid of its jurisdiction" exception as applying (1) where the federal court in an *in rem* proceeding obtains jurisdiction over the *res* before the state court; and (2) when enjoining state court proceedings is necessary to protect an earlier federal court injunction.   *Burr & Forman v. Blair*, 470 F.3d 1019, 1029 (11th Cir. 2006).

Here, the requested order is not expressly authorized by Congress and, as noted, is not necessary to "protect or effectuate" a previous judgment.   *See* 28 U.S.C. § 2283.   Further, this is not an *in rem* proceeding, and the requested order is not related to an earlier federal court injunction.   *See Burr & Forman*, 470 F.3d at 1029. Thus, the Court finds that none of the exceptions apply.   Accordingly, the Court will deny the United States' request for an order under the All Writs Act.

### B.   Rule 17(c) subpoena

The United States requests, in the alternative, that the Court issue a subpoena under Rule 17(c) of the Federal Rules of Criminal Procedure ordering Williams FRM to produce the Software and any related expert report for inspection prior to trial. Doc. 119 at 8.   If allowed, the United States requests that the Court direct the

production of the items in court and sufficiently prior to trial to allow the parties enough time to inspect the items and possibly arrange an expert examination.   *Id.* at 9.   Williams responds that the United States fails to meet its burden to justify a Rule 17(c) subpoena.   Doc. 123 at 11.   Williams argues the United States cannot show that it reasonably requires the Software to prepare for trial, as it has investigated Defendants since 2012 and collected "hundreds of thousands of documents" in the course of the investigation, indicted Defendants without first inspecting the Software, and has prepared for trial since at least February 2017 without requesting the Software.[5]   *Id.*   He further argues the United States' request under Rule 17(c) is an improper "attempt to circumvent Rule 16 discovery" and, "[b]y its own admission," the United States seeks the Rule 17 subpoena because it has not received any information related to the software in discovery.   *Id.* at 13.

Rule 17 of the Federal Rules of Criminal Procedure states, in relevant part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.   The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.   When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).   To require production before trial, the requesting party must show: (1) the documents requested are evidentiary and relevant; (2) the

---

[5] Williams thus argues that it is "incredulous to think that now, when we are sixty (60) days removed from trial, the Government suddenly requires [the Software] to properly prepare for trial."   Doc. 123 at 12.   If the United States needed the Software to adequately prepare for trial, according to Williams, "it would have made reasonable efforts to secure it in the course of the last six (6) years."   *Id.*

documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) the requesting party cannot properly prepare for trial without production and inspection of the documents in advance of trial and failure to obtain the documents may tend unreasonably to delay the trial; and (4) the application is made in good faith and is not intended as a general "fishing expedition." *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

Here, the Court finds the United States failed to meet its burden under *Nixon* as to the second and third prongs.   First, the United States failed to show the Software is not otherwise procurable reasonably in advance of trial.   *See id.*   The United States has subpoenaed counsel for Lee County, and Lee County filed a Motion for Relief in circuit court set for hearing on January 23, 2019.   Doc. 119-3 at 1, 3; Doc. 119-5 at 1, 5; Doc. 120.   The circuit court may grant Lee County's motion on that date, and the United States would have approximately two weeks to review the Software and incorporate it in its trial strategy.

Further, the United States has not made the requisite showing that it cannot properly prepare for trial without the Software.   *See Nixon*, 418 U.S. at 699-700. The United States' submissions with its motion indicate that the United States believes either (1) that the Software does not exist at all or (2) that it is a "sham." Doc. 119-4 at 2.   Thus, it is not clear why an expert evaluation of the Software would be necessary or why the United States requires the Software more than two weeks prior to trial.   The United States also indicated it may file a motion requesting that the Court exclude all mention of the Software at trial if it is not produced prior to

trial, and thus the United States seems to have viable trial strategies prepared in the event the Software is not produced.   Doc. 119-2 at 1-2.

In the event the circuit court denies Lee County's motion, however, the United States presumably would be out of options for procuring the Software prior to trial. Thus, as the deficiencies in the United States' showing under *Nixon* may be cured by further explanation, the request for a Rule 17(c) subpoena will be denied without prejudice to re-filing after the circuit court rules on Lee County's Motion for Relief.

ACCORDINGLY, it is

**ORDERED:**

The United States' Application for Order Under the All Writs Act or, in the Alternative, Motion for Rule 17(c) Subpoena (Doc. 119) is **DENIED without prejudice.**

**DONE** and **ORDERED** in Fort Myers, Florida on this 18th day of December, 2018.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record